UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES RODGERS and SHERYLL RODGERS, individually and as Husband and Wife; and CHRISTOPHER EVANS and JILL EVANS, individually and as Husband and Wife,<br><br>  Plaintiffs,<br><br>v.<br><br>BEECHCRAFT CORPORATION, f/k/a Hawker Beechcraft Corporation, a Kansas Corporation; HAWKER BEECHCRAFT GLOBAL CUSTOMER SUPPORT, LLC, f/k/a Hawker Beechcraft Services, Inc., a Kansas limited liability company,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 15-CV-0129-CVE-PJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Now before the Court is Plaintiff's [sic] Motion to File Amended Complaint (and Brief in Support) (Dkt. # 93). Plaintiffs request leave to file a second amended complaint alleging a new theory of product defect, and they argue that the motion is timely because the alleged product defect is based on recently discovered evidence. Dkt. # 93, at 7-9. Defendants respond that plaintiffs' motion to amend is untimely and futile. Dkt. # 101.

**I.**

On March 16, 2015, plaintiffs James Rodgers and Christopher Evans filed this case alleging a manufacturer's products liability claim against Beechcraft Corporation (Beechcraft) and a negligence claim against Beechcraft and Hawker Beechcraft Global Customer Support (HBGCS). Their spouses, Sheryll Rodgers and Jill Evans, allege claims of loss of consortium against

defendants. James Rodgers and Christopher Evans were passengers on a Beech Premier 390 aircraft, manufactured by Beechcraft, that was flying from Tulsa, Oklahoma to South Bend, Indiana. During the flight, plaintiffs allege that both engines of the plane were inadvertently shut down and the pilot was unable to restart both of the engines due to a defective electrical distribution bus system. Dkt. # 2, at 5. The pilot was unable to successfully land the plane and it crashed near the South Bend Airport, and James Rodgers and Christopher Evans were injured in the crash.

The Court entered a scheduling order (Dkt. # 18) and the parties were given a deadline of August 31, 2015 to file motion to join additional parties or amend the complaint. The parties also were given until May 16, 2016 to complete discovery. In January 2016, plaintiffs filed a motion to amend seeking leave to file an amended complaint alleging two additional theories of product defect:

1. Defective design of the alternate gear extension system to comply with Defendant's own specifications of a maximum of 25 lbs. pull force to drop the nose gear, and a maximum of 64 lbs. to drop the main gear; and

2. As alleged that at the time of compliance with the Recommended Service Bulletin ("RSB") dealing with the essential bus, that Defendant HBGCS was acting as agent and servant of Defendant Beech in altering the essential bus, if indeed such an alteration even occurred, and if such alteration occurred, to allege that the kit manufactured by Beech was defective, and that it created a defective aircraft before the manufacturer, through its agent, returned the aircraft to the consumer when at Defendants' request, the aircraft was brought into compliance with the RSB.

Dkt. # 26, at 10. Plaintiffs' motion to amend was unopposed and the Court granted the motion. Dkt. # 27. Plaintiffs claim that they discovered new evidence in March 2016 concerning an alleged problem with the instructions in the Premier Aircraft Flight Manual (AFM) for restarting the electrical generator following an engine shutdown, and they claim that defendants "had conducted

tests that confirm the existence of a defect in an AFM promulgated by [Beechcraft]."[1]  Dkt. # 93, at 3.  According to plaintiffs, defendants' expert Robert Gibson opined in his expert report that "[i]t is more likely than not that Mr. Caves failed to perform the POST START portion of the AIR START procedure which would have reset the generator of the operating engine and would have restored normal electrical power to the aircraft."  Id. at 4.  Plaintiffs claim that, on April 4, 2015, they received an inspection video from defendants and this was the first time they learned that "in order to restart the generator following dual engine shutdown, the switch must be cycled OFF/ON/RESET/ON."  Id.  Plaintiffs also rely, in part, on the deposition testimony of an expert witness, Michael Haider.  Haider testified that the air-start checklist was the "obvious" checklist to restart the engines, but defendants argue that Haider failed to disclose any opinion about the AFM in his original or supplemental expert reports.  See Dkt. # 93-3, at 2.

On June 20, 2016, plaintiffs filed a motion requesting leave to file a second amended complaint based on evidence they discovered in March and April 2016.  They seek leave to add a theory of product defect based on the allegedly inaccurate checklists for restarting the generators following an in-flight dual engine shutdown.  On the same day, defendants filed a motion for summary judgment (Dkt. # 94) arguing that plaintiffs could not prevail on any of the theories of product defect alleged in the amended complaint.  Dkt. # 94.  Defendants acknowledged in their motion for summary judgment that plaintiffs may attempt to establish that the aircraft was defective due to faulty instructions for restarting the generator, but they argue that plaintiffs failed to give defendants timely notice that plaintiffs were proceeding under this theory.  Dkt. # 94, at 42-45.

---

[1]   The Court notes that the parties dispute whether the video actually supports plaintiffs' new theory of liability based on the allegedly defective checklists in the AFM, but the parties' disagreement on this issue is irrelevant to the Court's ruling on plaintiffs' motion to amend.

3

## II.

Plaintiffs argue that good cause exists for allowing them to file a second amended complaint after the expiration of the deadline in the scheduling order, because they discovered evidence in March and April 2016 supporting a new theory of product defect.[2] Defendants argue that plaintiffs have known about this evidence for over two months and plaintiffs waited until the day that defendants filed their motion for summary judgment to request leave to amend.

Plaintiffs request leave to file a second amended complaint asserting a new theory of product defect in support of their manufacturers' products liability claim against Beechcraft. Under Fed. R. Civ. P. 15(a)(2), after the opposing party has served a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The decision to grant leave to amend is within the discretion of the district court but, when leave is sought, it should be "freely given when justice so requires." Bradley v.Val-Majias, 379 F.3d 892, 900-91 (10th Cir. 2004). Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Denial of a motion to amend may also be appropriate if the moving party unduly delayed when seeking leave to amend and has no adequate

---

[2] Plaintiffs state that the motion to amend "is filed out of an abundance of caution" and that it is not necessary for them to file a motion to amend to allege a new theory of product defect. Dkt. # 93, at 1-2. The Court disagrees. The AFM is not mentioned in the amended complaint and the theories of product defect alleged in the amended complaint were focused on the electrical system of the aircraft and the proper functioning of the landing gear. Plaintiffs are required to obtain leave to file a second amended complaint if they intend to proceed under an unrelated theory of product defect, because the amended complaint gives defendants no notice that plaintiffs are seeking to recover under a theory that the AFM was defective.

explanation for the delay. Minter, 451 F.3d at 1206. "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." Duncan v. Manager, Dept' of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

When a party seeks leave to amend after expiration of a scheduling order deadline, the moving party must show good cause pursuant to Fed. R. Civ. P. 16(b)(4) for seeking leave to amend outside of the deadline established in the Court's scheduling order, in addition to the Rule 15(a) standard for allowing a party to amend a pleading. Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" Id. at 1240 (quoting Pumpco, Inc. v. Schenker Int'l, Inc., 204 F.R.D. 667, 668 (D. Colo. 2001)). The good cause requirement may be satisfied "if a plaintiff learns new information through discovery or if the underlying law has changed." Id. at 1240.

The Court finds that plaintiffs have shown that good cause exists for seeking leave to amend outside of the deadline set in the scheduling order, because the proposed amendment was based on evidence gathered during discovery and after the deadline in the scheduling order to file a motion to amend had expired. The deadline in the scheduling to file motions to join additional parties or amend pleadings was August 31, 2015. Defendants argue that plaintiffs and their experts have had the AFM for more than a year and they were not diligent in seeking to develop evidence in support of a theory that the checklists in the AFM for restarting the generators and/or engines were defective. Dkt. # 93, at 5. Even if plaintiffs had a copy of the AFM, it is not clear that plaintiffs had an opportunity to test the checklists for restarting the generators of the aircraft and plaintiffs argue that they could not have known about the possible defect until defendants produced the inspection

5

video on April 4, 2016. Dkt. # 93, at 4; Dkt. # 127, at 4. This is a complex case and the parties were permitted to conduct discovery until May 16, 2016, and it is not clear that plaintiffs could have discovered before April 4, 2016 that there could be a viable theory of product defect based on the checklists in the AFM. See Gorsuch, Ltd., 771 F.3d at 1240. The Court finds that plaintiffs have shown good cause under Rule 16 for seeking leave to amend after the expiration of the deadline in the scheduling order.

However, plaintiffs must still satisfy the requirements of Rule 15(a) and they argue that this standard is easily met "unless there is good reason to deny" a motion to amend. Dkt. # 93, at 7. Plaintiffs discovered new evidence at least as early as April 4, 2016 and possibly earlier giving rise to a new theory of product defect, but they did not file a motion to amend until the day that defendants filed their motion for summary judgment. This raises a legitimate concern from defendants' perspective that plaintiffs are making their theories of liability a moving target in an attempt to avoid summary judgment. Plaintiffs have offered no explanation for their delay in filing their motion to amend, and they have made no attempt to explain why the motion could not have been filed sometime in or near April 2016. Under Rule 15(a), the focus is not on plaintiffs' failure to comply with the Court's scheduling order but, instead, the Court considers the reasonableness of plaintiff's explanation for any delay in filing the motion to amend. Minter, 451 F.3d at 1206. "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' to 'salvage a lost case by untimely suggestion of new theories of recovery,' to present 'theories seriatim' in an effort to avoid dismissal,' or to 'knowingly delay[ ] raising [an] issue until the eve of trial.'" Id. The Court must consider plaintiffs' failure to explain their delay in filing the motion to amend after learning of the new evidence, and the Court must also

6

take into account the timing of plaintiffs' motion in relation to the dispositive motion deadline. The timing of the filing of plaintiffs' motion to amend raises concerns that plaintiffs purposefully delayed filing the motion in an effort to avoid summary judgment.

Even with this concern, the Court finds that plaintiffs' motion to amend should be granted because evidence concerning the checklists in the AFM will likely be introduced by defendants at trial, and it would serve no purpose to deny plaintiffs' motion to amend. One of defendants' primary defenses is pilot error and defendants state in the joint status report that they intend to show that the "[t]he pilots . . . did not follow published procedures and checklists." Dkt. # 17, at 2. An appropriate response by plaintiffs to such an argument would be that the checklists were defective and this evidence would likely be relevant and admissible at trial.[3] The timing of plaintiffs' motion to amend would ordinarily be a sufficient reason to deny the motion, but defendants have not shown that they will actually be prejudiced by allowing the amendment when they will likely introduce evidence about the AFM checklists at trial. However, the Court finds that defendants should be permitted to file a supplemental brief in support of their motion for summary judgment (Dkt. # 94), because plaintiffs had not clearly disclosed this theory by filing a second amended complaint before the motion for summary judgment was filed.

**IT IS THEREFORE ORDERED** that Plaintiff's [sic] Motion to File Amended Complaint (and Brief in Support) (Dkt. # 93) is **granted**, and plaintiffs' second amended complaint must be filed no later than **July 22, 2016**.

---

[3] The Court is not making a finding that any specific evidence on this issue is admissible but is merely pointing out the likely relevance of this evidence at trial. If plaintiffs intend to offer expert testimony about the AFM checklists, they must show that they have made timely disclosure of the expert opinions and that their experts have been made available for deposition about any opinions concerning the AFM checklists.
7

**IT IS FURTHER ORDERED** that defendants may file a supplemental brief not to exceed 10 pages in support of their motion for summary judgment concerning plaintiffs' theory of product defect based on the AFM checklists no later than **July 27, 2016**.

**DATED** this 20th day of July, 2016.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE