**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JAMES R. RODGERS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-129-CVE-PJC** |
| | ) | |
| **BEECHCRAFT CORPORATION,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is the Defendants' Motion to Strike Improper

"Supplementation" by Plaintiffs' Experts ("Defendants' Motion").  [Dkt. No. 150].

Defendants assert that Plaintiffs' experts Frank Graham ("Graham"), Donald

Sommer ("Sommer"), John Bloomfield ("Bloomfield"), and Michael Haider

("Haider"), all improperly "supplemented" their expert opinions with Affidavits

("the July Affidavits") they submitted in response to Defendants' *Daubert*[1]

motions.[2]  Defendants' Motion was among those argued at the *Daubert* hearing,

September 7-8, 2016.

---

[1]  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established criteria for a court's "Gatekeeper" evaluation of expert opinions/testimony.

[2]  Defendants also attack other specific material/opinions provided such as sound files that Graham produced for the first time on June 29, 2016.  These specific attacks are addressed *infra* in the discussion pertaining to each expert.

# I
## Background

This lawsuit arises from the March 17, 2013, crash of a Beech Premier 390 aircraft en route from Tulsa, Oklahoma, to South Bend, Indiana.  The plane was piloted by Wesley Caves and carried passengers Steve Davis, James Rodgers and Christopher Evans.  On approach to South Bend, the aircraft experienced an inflight emergency created by the accidental shutdown of both engines.  The pilot attempted to land at the South Bend Airport, but was advised by Air Traffic Control that the plane's main landing gear was not extended and that Caves should exercise a standard "go around" to evaluate his landing gear extension options and make another attempt.  Caves again made a second unsuccessful attempt to land, and the plane crashed just south of the South Bend airport.  Caves and Davis were killed.  Passengers Rodgers and Evans were seriously injured.

In this case, the surviving passengers assert claims of negligence against Beechcraft Corporation ("Beechcraft") and Hawker Beechcraft Global Customer Support, LLC ("HGCS") and a products liability claim against Beechcraft.[3] Their spouses, Sheryll Rodgers and Jill Evans, assert claims of loss of consortium against both defendants.  Plaintiffs seek compensatory and punitive damages.

In the instant motion, Defendants complain that the opinions and additional materials set forth in the July Affidavits were not timely disclosed

---

[3]    On May 31, 2016, a companion case, *Caves et al. v. Beechcraft Corp., et al.*, No. 15-CV-125-CVE-PJC, was dismissed without prejudice.

because they were provided after the deadline for expert reports[4], after the experts' depositions[5], after discovery deadline[6], after the filing of Defendants' Motion for Summary Judgment[7] and after filing of Defendants' various *Daubert* motions[8] and motions in limine.[9]  The July Affidavits are attached as exhibits to Plaintiffs' responses to the *Daubert* motions.[10]  In addition to their use in supporting those responses, Plaintiffs seek to designate the July Affidavits as supplemental expert reports.[11]

---

[4]     The initial Scheduling Order set November 30, 2015, as the deadline for Plaintiffs' expert reports and January 30, 2016, as Defendants' expert deadline. This deadline applied both to this case and in the now dismissed companion case, *Caves v. Beechcraft*, No. 15-CV-125-CVE-PJC.  The deadline for expert identification and reports was extended 60 days on November 3, 2015.  *See* Dkt. No. 49 in *Caves*.

[5]     Sommer was deposed March 23, 2016; Bloomfield and Graham on April 15, 2016; and. Haider on April 21, 2016.

[6]     Discovery cutoff was May 16, 2016.  [Dkt. No. 18, line 3].

[7]     Defendants' Motion for Summary Judgment was filed on June 20, 2016. [Dkt. No. 94].

[8]     These motions were filed on June 6, 2016.  [Dkt. Nos. 52, 56, 57 & 60].

[9]     Defendants' two Motions in Limine were filed on June 6, 2016.  [Dkt. Nos. 62 & 66].

[10]    *See*, Dkt. Nos. 116-1 (Bloomfield); 120-4 (Graham); 117-6 (Sommer); and, 118-3 (Haider)].  These Affidavits run in length from 3 pages (Haider), to 18 pages with 96 pages of attachments (Bloomfield).

[11]    At a hearing on the *Daubert* motions held September 7 & 8, 2016, Plaintiffs' counsel indicated he intended the July Affidavits as supplemental expert reports.

## II
## Applicable Legal Principles

The witnesses in question are all experts obligated to produce a report under the Federal Rules of Civil Procedure.  Expert reports must contain the following:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii)    the facts or data considered by the witness in forming them;
(iii)   any exhibits that will be used to summarize or support them;
(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi)     a statement of the compensation to be paid for the study and testimony in the case.

Rule 26(a)(2)(B)(i)-(vi).

The objective of the expert report is to provide the opposing party a fair opportunity to assess the expert's credentials, methodology and conclusions. The reports also help the opposing party depose the expert and determine its own expert witness needs.  Finally, the report prevents an expert from "lying in wait" with new, last minute opinions.  Steven S. Gensler, 1 *Federal Rules of Civil Procedure:  Rules and Commentary* 548 (2013).  This enables the opposing party to prepare for deposition and trial.  *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010).

Experts are obligated to supplement their reports if they learn that the report contains a material error or inadvertent omission.  Pursuant to Rule 26(a)(2)(E), expert disclosures must be supplemented in accordance with Rule 26(e).

Fed. R. Civ. P. 26(e) provides:

(1) In General. A party who has made a disclosure under Rule 26(a)
– or who has responded to an interrogatory, request for
production, or request for admission – must supplement or
correct its disclosure or response:

(A) in a timely manner **if the party learns that in some material
respect the disclosure or response is incomplete or
incorrect**, and if the additional or corrective information has
not otherwise been made known to the other parties during the
discovery process or in writing; or

(B) as ordered by the court.

(2) Expert Witness. For an expert whose report must be disclosed
under Rule 26(a)(2)(B), the party's duty to supplement extends
both to information included in the report and to information
given during the expert's deposition. Any additions or changes
to this information must be disclosed by the time the party's
pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e) (emphasis added).

The purpose of supplementation is to correct inadvertent errors, not to
allow a party to engage in "gamesmanship" – creating a "new and improved"
expert report in order to gain tactical advantage, by bolstering opinions to avert
a dispositive motion or an expert challenge.  *Beller ex rel. Beller v. U.S.*, 221
F.R.D. 696, 701 (D.N.M. 2003); *Gallagher v. Southern Source Packaging, LLC*,
568 F. Supp. 2d 624, 630 (E.D. N.C. 2008).

As this Court has noted:

A supplemental expert report that states additional opinions or
rationales or seeks to "strengthen" or "deepen" opinions expressed
in the original expert report exceeds the bounds of permissible
supplementation and is subject to exclusion under Rule 37(c)(1).
"To rule otherwise would create a system where preliminary
[expert] reports could be followed by supplementary reports and
there would be no finality to expert reports, as each side, in order
to buttress its case or position, could 'supplement' existing reports

5

and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

*Palmer v. Asarco*, 2007 WL 2254343, *3 (N.D. Okla. Aug. 3, 2007) (*quoting Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citations omitted).

A supplemental expert report "is limited to correcting inaccurate or incomplete information in a timely filed report." *In re Commercial Fin. Servs., Inc. v. Chase Manhattan Bank USA, N.A.*, 2005 WL 6499289, *8 (Bankr. N.D. Okla. 2005); *Aid for Women v. Foulston*, 2005 WL 6964192, *3 (D.Kan. July 14, 2005) (*citing Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (D.Ga. 2001). Supplementation does not confer a right to "ignore Court deadlines, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages." *Reid*, 205 F.R.D. 662. Nor does Rule 26(e) allow a party to "sandbag his opponent or to 'deepen' or 'strengthen' his case where the information should have been included in the expert report." *Beller*, 221 F.R.D. at 701. *See, Minebea Co. LTD. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (stating that Rule 26(e)(1) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report" and "prevents experts from 'lying in wait' to express new opinions at the last minute"). The expert disclosure requirements of Rule 26 are clear and a "litigant who fails to comply with these requirements does so at his own peril." *The Quapaw Tribe of Okla. v. Blue Tee Corp*, 2010 WL 3909204,

*6 (N.D. Okla. Sept. 29, 2010) (*quoting Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 429 (N.D.Okla. 2008).

The supplementation obligation applies to the expert's Rule 26 report and to his/her deposition.  Rule 26(e)(2).

A court may exclude specific expert opinions or bases for expert opinions that were not properly disclosed.  *Quapaw Tribe*, 2010 WL 3909204, *3 (*citing Keach v. United States Trust Co.*, 419 F.3d 626, 641 (7th Cir. 2005).  An untimely disclosure should be permitted only where the court finds the violation of Rule 26(a) was justified or harmless.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002); *Scholl v. Pateder*, 2012 WL 2360542, *4 (D.Colo. June 20, 2012).  This determination is entrusted to the broad discretion of the trial court.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  In deciding this question, the Court should consider four factors:  (1) prejudice/surprise to the party against whom the new information would be used; (2) the ability to cure the prejudice; (3) the extent that allowing the new information would disrupt the trial; and, (4) the moving party's bad faith or willfulness.  *Id.*; *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 19080) (*citing Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904-05 (3d Cir. 1977))

### III
### Timing of Expert Reports, Supplementation and Rebuttal

Expert reports must contain "all opinions" the witness intends to offer at trial, as well as the facts and data that underlie those opinions.  Rule

26(a)(2)(B). Generally, the timing of expert reports is set out in the Court's Scheduling Order. *See*, for example, Dkt. No. 18, lines 7-8. A party who has made a disclosure under Rule 26(a), including disclosures by a testifying expert, must supplement his report when he learns that "in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1)(A). At the latest, this supplementation must be disclosed by the time the party's pretrial disclosures are due under Rule 26(a)(3). *See*, Rule 26(e)(2).

Where an expert seeks solely to contradict or rebut evidence on the same subject identified by another party's expert, this rebuttal material must be disclosed within 30 days after the other expert's disclosure. Rule 26(a)(2)(D)(ii).

In this case, Plaintiffs' experts' reports were produced in early February 2016, and the witnesses were deposed in April and May. Supplementation to correct information in these reports or the experts' depositions was due by September 12, 2016. [Dkt. No. 78, ¶ 12]. Rebuttal disclosures by Plaintiffs' experts were due within 30 days of the Defendants' expert disclosures they were intended to rebut. Rule 26(a)(2)(D)(ii).

## IV
## Discussion

Of particular significance to the Defendants' Motion is new material contained in the Affidavits of Sommer and Haider concerning alleged defects in the Airplane Flight Manual ("AFM") checklists for certain emergency functions (hereafter, "the AFM material"). However, the Court will first address the non-

AFM material – opinions and material in the Affidavits of Bloomfield, Graham and Sommer which Defendants contend constitute untimely expert disclosures, and will then address the AFM material.

## A. Supplementation by Bloomfield, Graham and Sommer

Bloomfield, Graham and Sommer all attached Affidavits to their responses to Defendants' *Daubert* motions.  These Affidavits sought to do two things:  First, to support Plaintiffs' opposition to Defendants' *Daubert* motions; second, to supplement the information contained in these experts' reports and depositions.  This Order concerns only this latter issue – whether the Affidavits are proper supplementation of expert reports/opinions under Rule 26.

## (1) John Bloomfield

Bloomfield holds a degree in Industrial and Systems Engineering from Georgia Institute of Technology.  He has been an expert witness in a large number of airplane crash cases.

Bloomfield was retained as an expert in this case and the companion case, *Caves v. Beechcraft Corporation, et al.*, No. 15-CV-125-CVE-PJC.  He examined the plane wreckage on February 24, 2015 at St. Peter's Aircraft Recovery, Wright City, Missouri.  During this examination, Bloomfield states that he "discovered a loose screw that connected the feed wire to the Essential Bus on the pilot's side." [Dkt. No. 52-6, at 13].  From this, Bloomfield arrived at his core opinion:  that this loose wire "*caused widespread electrical system failures that ultimately caused the crash.*" [Dkt. No. 52-6, ¶II(8) (emphasis in

original)].  Bloomfield is the Plaintiffs' chief expert on electrical issues related to the subject aircraft.  *See*, Dkt. No. 52-6 ¶V(11).

Bloomfield participated in further inspection of aircraft parts on February 26 and 27 after certain parts were shipped to Aeroscope, Inc., in Colorado.  He also participated in additional component inspection on July 16, 2015, at McSwain Engineering, Pensacola, Florida.  He conducted a "thermal study" of the F900 torque putty used on the aircraft and a "washer torque versus mechanical signature" test.

Bloomfield submitted his expert report on February 1, 2016, and was deposed on April 5, 2016.

In his deposition, he admitted to several errors – some of which negated one or more opinions in his report.  For example, Bloomfield originally stated that the loose wire to the essential bus existed at the time the aircraft left the manufacturer and that this loose connection was related to a large number of component failures on the plane.  [Dkt. No. 52-6, at ¶ X(27)].  He later conceded that the wire had been disconnected during service work on the plane in June 2009, and that his report was incorrect in this regard.  [Dkt. No. 52-9, at 91, lines 11-15].

On June 5, 2016, Defendants filed a Motion in Limine regarding Bloomfield's expert testimony.  In response, on July 12, 2016, Bloomfield executed an Affidavit [Dkt. No. 116-1] responding to that motion.  [Dkt. No. 116-1, at ¶ 5]. The Affidavit states that it is offered in direct response to the Defendants' motion to exclude or limit Bloomfield's testimony.  "I have reviewed

the motion *in limine* [actually, the Motion to Exclude/Limit] that Defendants filed on June 6, 2016 with respect to my testimony (the "Bloomfield motion")…. The purpose of this Affidavit is to respond to the technical arguments in the Bloomfield motion." [Dkt. No. 116-1, ¶ 5]. Bloomfield's Affidavit is 18 pages long. Attached to it are 96 pages of materials. The materials include: excerpts of depositions (*see*, Exh. 2, 3, 5, 11), other expert reports *see*, Exh.4 & 9), and documents (*see*, Exh. 14). Many of these materials were available at the time Bloomfield submitted his initial expert report and should have been included then. To the extent Bloomfield seeks to rebut the Defendants' expert opinions included in the Motion to Exclude/Limit, the deadline for such rebuttal was 30 days after Defendants' opinions were disclosed to Plaintiffs – well before Bloomfield executed his Affidavit and produced his "supplemental report" in July 2016.

The Court has reviewed Bloomfield's expert report, his deposition and his Affidavit and concludes that the July Affidavit is not proper supplementation as permitted by Rule 26.

**(2) Frank Graham**

Graham holds a bachelor's degree in German and a Master's degree in speech pathology. [Dkt. No. 56-5, at 15]. He worked toward, but did not obtain, a Ph.D. degree in communicative disorders [*Id.*]. He also holds a law degree. [*Id.*, at 14-15]. He has worked in the aviation industry since 1989, as a pilot, flight instructor, director of flight safety and president of his own

accident investigation company.  His specialty appears to be audio forensics, especially CVR transcription and analysis.

Graham submitted his expert report ("initial report") on Feb. 1, 2016 (deadline per Scheduling Order was Nov. 30, 2015), and supplemented that report on April 15, 2016.[12]  Graham was deposed on May 12, 2016.  Key to Graham's testimony is his opinion that Pilot Caves "did in fact move the thrust lever as instructed" in order to restart his engines.[13]  Graham states that by listening to the Cockpit Voice Recorder using special equipment – hardware and software – he heard "a sound not inconsistent with thrust lever movement."  *See*, Graham Supplement to Expert Report [Dkt. No. 12-5 at 13; Graham dep., Dkt. No. 56-4, at 136].  Graham was asked to bring equipment to his deposition to demonstrate the sound he claimed to be the thrust lever; however, for a variety of reasons, Graham did not perform the demonstration.[14]

On June 29, 2016 – seven weeks after his deposition – Plaintiffs' counsel produced ".wav files" related to the sounds Graham says he heard.  Defendants seek to strike these files as improper supplementation of Graham's report.

---

[12]     Graham's "supplemental Report" is actually his initial expert report regarding his analysis of the Cockpit Voice Recorder ("CVR") because he did not receive the CVR until after the expert deadline and was given leave to supplement.

[13]     This relates to whether Caves properly followed procedures to restart his engines by moving the thrust lever from cutoff to idle at the appropriate time.

[14]     Apparently, Defendants' counsel made the demonstration request only 24 hours before Graham's scheduled deposition [Dkt. Not. 56-4, at 137, lines 6-17].  Graham implies this is too short of notice.  However, Graham also stated that he could not have reproduced the sound in any event because he did not have the necessary equipment. [*Id.*, at 138, lines 3-10].  He also stated that even if he were able to demonstrate the sound, he would do so "only on my terms and probably off the record."  [*Id.*, lines 14-19].

The Court agrees that Graham's belatedly produced ".wav files" should have been produced with his April 15 Supplement to Expert Report or, at the latest, at his May 12 deposition.  The production of these files on June 29 constitutes neither correction of an inadvertent omission nor correction of an error in the expert report.  The materials were provided well after discovery cutoff, after Graham's deposition, and after other critical deadlines had passed.

Furthermore, after reviewing Graham's July Affidavit, the Court finds that the material contained therein is also impermissible supplementation designed only to bolster problems in Graham's report.  All of this material should have been included in his April 15 Report.

### (3) Don Sommer

Donald Sommers holds a bachelor's degree in mechanical engineering and has done graduate study in "instrumentation, testing systems and Cryogenics." [Dkt. No. 117-6, at 10].  He is president and owner of Aeroscope, Inc., a company involved in forensic engineering, aircraft accident reconstruction and failure analysis of aircraft mainframes, engines and systems.  [*Id.*]. Donald Sommers and his son, Colin Sommers, submitted a joint expert report on January 31, 2016.[15]  [Dkt. No. 117-9].  Plaintiffs state that Colin Sommers will not testify as to *any* issues; therefore, all testimony by Colin Sommers is barred.  [Dkt. No. 117, ¶ III(C).

---

[15]    It appears this report was prepared for use in the companion case; however, the expert analysis – if proper – would be applicable in this case as well.

Donald Sommers professes expertise in a number of areas including aircraft accident reconstruction, in-flight instrumentation systems, mechanical and hydraulic systems, aircraft performance, failure analysis, interpretations of FAA regulations, pilot reactions and pilot training.  [Dkt. 57-6, at 38].  He was deposed on March 23, 2016.[16]

In his deposition on March 23, 2016, Sommer made it clear that the Plaintiffs' expert on electrical issues with the Premier aircraft was Bloomfield.  [E.g., Dkt. No. 57-7 at p. 157, lines 15-23; p. 168, lines 17-21; p. 169, lines 14-17; p. 171, lines 18-20].  Plaintiffs state in their Response to the pending *Daubert* motion that Sommer will not offer expert testimony concerning electrical failures or their cause on the Premier aircraft.  [Dkt. No. 117, ¶ III(D)].

After reviewing Sommer's expert report, deposition and July Affidavit, the Court concludes that the July Affidavit is not proper supplementation because it was not offered to correct Sommer's previously asserted opinions or to correct an inadvertent omission.

Defendants also specifically object to additional testing Sommer performed on the alternative landing gear system, apparently sometime after his expert report and his deposition.  In his July Affidavit, Sommer states:

> I also did lab testing of my test apparatus with the exemplar "T" handle to verify the methodology was accurate and repeatable.  It in fact was found to be repeatable and reliable.  Specifically, there is no material or statistically significant difference in the pull force measured using a single versus a double hook around the T-handle.

---

[16]     Relevant portions of Sommers' deposition were set forth in Dkt. No. 57-7.

[Dkt. No. 117-6, ¶ 21].

This testing was clearly done to rebut assertions by Defendants' expert Robert C. Winn that Sommer and Bloomfield had tested the force necessary to deploy the alternate landing gear system using "techniques that were inappropriate for that test." [*See* Dkt. No. 57-15, at 2]. This assertion was made in Winn's March 29, 2016 Investigative Report and in his May 6, 2016 Supplemental Report. [*Id.*]. Under the Federal Rules, new evidence designed to contradict or rebut Winn's assertions had to be disclosed within 30 days of Winn's report(s). Thus, Sommer's new testing had to be completed and disclosed by June 5, at the latest. This new evidence was not provided until the July Affidavit was submitted in response to Defendant's *Daubert* motion on July 12, 2016. Accordingly, Sommer's new testing was not timely presented under Rule 26(a)(2)(D)(ii).

**B. Are the Untimely Disclosures 'Justified' or 'Harmless'?**

Having determined that these disclosures were not proper supplementation and, thus, are untimely, the Court must now determine whether the "supplementation" contained in these witnesses' July 2016 Affidavits is justified or harmless considering the factors outlined in *Woodworker's Supply*, 170 F.3d at 993.

**(1) Prejudice to Defendants.**

Defendants will be prejudiced if the Plaintiffs are allowed to rely on the untimely disclosures set out in their Affidavits. Defendants did not receive Plaintiffs' expert's Affidavits until July 12, 2016 – after the close of discovery,

15

after Plaintiffs' experts had been deposed, after Defendants' own experts had prepared their expert reports, after Defendants filed their Motion for Summary Judgment and after Defendants had filed their pending *Daubert* challenges. Allowing Plaintiffs' experts to rewrite their expert reports will cause significant prejudice to Defendants' preparation of this case.  It would require re-opening all of the matters described above to afford Defendants an opportunity to consider and respond to the information in the Affidavits.  This would result in substantial cost and delay to Defendants and would derail the efficient resolution of this case.

### (2) Can the Prejudice be Cured?

The prejudice outlined above cannot reasonably be cured.  Substantive motions have been filed and discovery has closed.  Plaintiffs have failed to offer a reasonable method to cure the prejudice described above.  As in *Quapaw Tribe*, this failure to suggest some remedial or curative action "supports the exclusion of the supplemental reports."  *Quapaw Tribe*, at *5.  There is no curative procedure short of re-opening the case for new expert reports and starting the pretrial clock running anew.

### (3) Disruption to the Trial Schedule

Permitting the supplemental reports would disrupt the Court's schedule for this case.  Although all remaining pre-trial and trial dates have been suspended while the Court resolves the pending motions, the Court would be required to allow re-deposition of Plaintiffs' experts, additional expert reports by Defendants' experts, possible re-opening of discovery, and re-opening the

summary judgment record.  There must be finality to this process if the case is ever to be readied for trial.

### (4) Bad Faith or Willfulness

Plaintiffs' witnesses could have alerted Defendants to the fact that additional testing was in progress or planned to support their expert opinions. The experts could have advised that new  opinions were being prepared.  The witnesses failed to do so.  The Court previously noted that the timing of Plaintiffs' Motion to Amend the Complaint "raises a legitimate concern … that plaintiffs are making their theories of liability a moving target in an attempt to avoid summary judgment." [Dkt. No. 128, at 6].  The same sort of concern may reasonably arise when new opinions and new bases for those opinions are submitted following the filing of a *Daubert* challenge.

Considering all of these factors, the Court finds that Bloomfield's, Graham's and Sommer's "supplemental reports" should be excluded to prevent prejudice to Defendants.

### C. New Material Regarding the AFM Claim

A major part of the Defendants' Motion concerns new expert opinions contained in the July 2016 Affidavits involving alleged defects in the AFM.  The Affidavits of Sommer and Haider offer opinions regarding the AFM procedure for restarting the engines and for deploying the alternate landing gear system. Neither Plaintiffs' Complaint [Dkt. No. 2] nor their Amended Complaint [Dkt. No. 28] asserted a claim based on a defect in the AFM.  In June 2016, Plaintiffs sought leave to file a Second Amended Complaint after the deadline for

17

amendment.  Plaintiffs asserted that they had "new evidence" that supported a claim based on alleged flaws in the AFM.  [Dkt. No. 93].  The Court granted the motion [Dkt. No. 128], and the Second Amended Complaint was filed on July 21, 2016. The AFM claim was asserted for the first time in the Second Amended Complaint ("SAC") [Dkt. No. 129, ¶¶23-27].

Plaintiffs were granted leave to file the SAC out of time based on the assertion that in March 2016, "Plaintiffs learned new – previously undisclosed – facts that support their existing products liability claims against Defendants. In particular, Plaintiffs learned that Defendants had conducted tests that confirm the existence of a defect in an AFM promulgated by Defendant Beechcraft."  [Dkt. No. 93, at ¶7].  Thus, the new opinions concerning the AFM are based on this specific "new" evidence that Plaintiffs learned from the March 29, 2016, expert report of Robert "Hoot" Gibson ("Gibson") and an inspection video produced to Plaintiffs on April 4, 2016.

The SAC states that there was a defect in the AFM with regard to the "Post-Start portion of the Air Start checklist."  [Dkt. No. 129, ¶27].  The SAC further states:

> (c) In his March 29, 2016 report, defense expert Robert Gibson opined that "[i]t is more likely than not that Mr. Caves failed to perform the POST START portion of the AIR START procedure which would have reset the generator of the operating engine and would have restored normal electrical power to the aircraft."

> (d) In an inspection video produced by the Defendant and received by Plaintiffs on or about April 4, 2016, Plaintiffs learned that in order to restart the generator following dual engine shutdown, the switch must be cycled OFF/ON/RESET/ON, instead of just RESET/ON as represented in the AFM.  Consequently, the AFM procedure for Air Start of the Aircraft is defective.

[Dkt. No. 129, ¶¶ 27(c) & (d)].

Haider submitted his expert report in February 2016 and a revised report on April 20, 2016.  He was deposed on April 21.  On July 11, Haider executed an Affidavit in support of Plaintiffs' Response to Defendants' Motion to Exclude/Limit Haider's testimony.  [Dkt. No. 118-3].  In his Affidavit, Haider states:

> 5. As a pilot, I rely on the accuracy of the flight manual provided to me by the manufacturer.
>
> 6. As a pilot, I follow the steps listed in the flight manual exactly without any deviation.
>
> 7. The correct checklist for Caves to follow after Davis shut off the engine was the "Air Start" section, exactly as represented in Defendant Expert Hoot Gibson's report.
>
> 8. A reasonable pilot would not follow the "Engine Shut Down" checklist before following the "Air Start" checklist.
>
> 9. Based on testing by Beech, following the "Air Start" checklist would not reliably restart the generators.  The post-start portion of the Air Start checklist simply directs the pilot to cycle the generator switch RESET/ON.  *See*, Airplane Flight manual Air Start.  However Defendant testing revealed that to start the generator, it is necessary to cycle the switch OFF/ON/RESET/ON.
>
> 10. Without at least one operating engine and one operating generator, the Premier was unreasonably dangerous.
>
> 11.  The instructions in the Airplane Flight manual on the use of the alternate landing gear should have – but did not – provide critical information to the pilot instructing how hard and how far to pull the handle.  *See*, Airplane Flight Manual Alternate landing Gear.  Further, it did not but should have provided mechanical confirmation of complete deployment of the landing gear.

[Dkt. No. 118-3, ¶¶5-11].

Haider's opinion in Paragraph No. 11 is improper supplementation because it is a new opinion  -- it does not correct and error or omission. More importantly, it is not an opinion justified by "new evidence" in the Gibson report and testing because that material concerned the proper sequence to restart the generator, not the alternate landing system. Thus, this opinion is stricken.

With respect to the opinions expressed in Paragraphs 5-10, these opinions relate to the new AFM claim permitted by the Court.  These opinions are timely because they were disclosed on July 11, 2016 – well before the deadline for disclosures under Rule 26(a)(3).  The District Court imposed two conditions before opinions related to the AFM claim would be admissible:

> The Court is not making a finding that any specific evidence on this issue [the AFM claim] is admissible but is merely pointing out the likely relevance of this evidence at trial.  If plaintiffs intend to offer expert testimony about the AFM checklists, **they must show that they have made timely disclosure of the expert opinions and that their experts have been made available for deposition about any opinions concerning the AFM checklists**.

[Dkt. No. 128, at n.3 (emphasis added)].

Thus, Haider's AFM/restart opinion is inadmissible unless he is timely made available for deposition on this opinion.

Sommer also filed an Affidavit on July 12, 2016, which contains opinions regarding the AFM as it related to the alternate landing gear system.  Sommer had mentioned this topic in his initial expert report [Dkt. No. 57-6, ¶11] and at his deposition, *e.g.*, Dkt. No. 57-7, p. 246, lines 2-10.]  The problem with Sommer's "supplementation" is that there is no claim of new evidence with

regard to the AFM with regard to the alternate landing gear system.  The only "new evidence" identified by Plaintiffs concerned the AFM procedure for the engine restart.  *See* Dkt. No. 93, at ¶¶ 8-14.  Thus, Sommer's new opinions and information concerning the AFM manual in regard to the alternate landing gear system were not produced in response to new evidence.  Sommer's Affidavit in this regard constitutes improper expert supplementation for the reasons previously discussed.

## Summary

The opinions and materials set forth in the July Affidavits of Bloomfield, Graham and Sommer are not proper supplementation under Rule 26 and are, therefore, stricken.  Haider's July Affidavit contains a new opinion regarding the AFM and engine restart procedures.  This opinion is permissible in light of the District Court's Order granting leave to file the SAC.  Therefore, Haider's opinion regarding the ATM procedure for restarting the engines is permissible – *but only if*, Haider is made available for deposition in timely fashion.

## Objections

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned.  As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation.  A party wishing to file objections to this Report and Recommendation must do so by **October 4, 2016**.  *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file

written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court.  *See Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

**DATED** this 20th day of September 2016.

Paul J. Cleary
United States Magistrate Judge