**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**JAMES RODGERS and SHERYLL RODGERS, individually and as Husband and Wife; and CHRISTOPHER EVANS and JILL EVANS, individually and as Husband and Wife,**

**Plaintiffs,**

**v.**

**BEECHCRAFT CORPORATION, f/k/a Hawker Beechcraft Corporation, a Kansas Corporation; HAWKER BEECHCRAFT GLOBAL CUSTOMER SUPPORT, LLC, f/k/a Hawker Beechcraft Services, Inc., a Kansas limited liability company,**

**Defendants.**

**Case No. 15-CV-0129-CVE-PJC**

**OPINION AND ORDER**

In the scheduling order (Dkt. # 18), the Court set a deadline of June 6, 2016 for the parties to file motions in limine.[1] Defendants Beechcraft Corporation (Beechcraft) and Hawker Beechcraft Global Customer Support, LLC (HBGCS) filed two motions in limine (Dkt. ## 62, 66), and plaintiffs filed seven motions in limine (Dkt. ## 43, 44, 69, 70, 71, 72, 73). The parties' motions in limine are fully briefed. The motions in limine had been referred to the magistrate judge, but the referral has been withdrawn. See Dkt. ## 76, 205.

---

1 In a separate opinion and order, the Court ruled on the parties' motions in limine to exclude expert testimony, except as to one still-pending motion (Dkt. # 60). The motions in limine at issue in this Opinion and Order are the non-expert motions in limine.

**I.**

On March 16, 2015, plaintiffs James Rodgers and Christopher Evans filed this case alleging a manufacturer's products liability claim against Beechcraft and a negligence claim against Beechcraft and HBGCS. Their spouses, Sheryll Rodgers and Jill Evans, also allege claims of loss of consortium against defendants. James Rodgers and Christopher Evans were passengers on a Beech Premier 390 aircraft, manufactured by Beechcraft in 2008, that was flying from Tulsa, Oklahoma to South Bend, Indiana on March 17, 2013, and the pilot of the aircraft was Wesley Caves. During the flight, plaintiffs allege that both engines of the plane were inadvertently shut down and the pilot was unable to restart both of the engines due to a defective electrical bus distribution system. Dkt. # 28, at 5-6. The pilot was unable to successfully land the plane and it crashed near the South Bend Airport, and James Rodgers and Christopher Evans were injured in the crash. Plaintiffs allege that the alternate landing gear system failed to deploy properly during the attempted landing and that the alternate landing gear system was defectively designed. Id. at 12.

In June 2016, plaintiffs filed a motion to file a second amended complaint (Dkt. # 93) adding a theory of product defect based on the aircraft flight manual (AFM), and they allege that the AFM contains faulty instructions for restarting the electrical generator following a dual engine shutdown. Id. at 4-5. Defendants opposed plaintiffs' motion to amend on the ground that plaintiffs' motion was untimely. The Court found that plaintiffs had established good cause to amend the complaint outside of the deadline established in the scheduling order for parties to file motions to amend. Dkt. # 128, at 6. However, plaintiffs' motion was filed on the same day as defendants' motion for summary judgment, and the Court considered that there was a legitimate question as to whether the motion to amend was filed in an attempt to avoid summary judgment. Id. at 7. The Court

determined that evidence relating to the AFM would be offered at trial even if the motion to amend were denied, and defendants would not be prejudiced by granting the motion to amend. Plaintiffs were permitted to file a second amended complaint.

In the second amended complaint (Dkt. # 129), plaintiffs allege claims of negligence against Beechcraft and HBGCS, a manufacturer's products liability claim against Beechcraft, and loss of consortium claims against Beechcraft and HBGCS. The second amended complaint alleges three defects with the subject aircraft: (1) HBGCS incorrectly installed a repair kit and created a defect in the electrical bus distribution system that caused intermittent electrical supply to essential systems; (2) the alternate landing gear did not operate as represented in the design specifications; and (3) the AFM included faulty instructions for restarting the electrical generators following a shutdown. Dkt. # 129, at 5-7. In addition, plaintiffs allege that defendants were negligent due to inadequate assembly and inspection practices, substandard wiring practices, and the design of the alternate landing gear. Id. at 10.

**II.**

"'A motion *in limine* is a request for guidance by the court regarding an evidentiary question,'" which the court may provide at its discretion to aid the parties in formulating trial strategy." Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995). Motions in limine provide a way for the district court to rule in advance of trial on possible evidentiary disputes, because this may avoid a lengthy interruption during the trial to resolve objections to evidence. Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). A ruling on a motion in limine "is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." Edens v. The Netherlands Ins. Co., 834 F.3d 1116, 1130 (10th Cir. 2016). Unless otherwise stated in this

Opinion and Order, the Court's rulings on evidentiary issues are preliminary and non-final and the Court "may change its ruling at any time for whatever reason it deems appropriate." T.G. v. Remington Arms Co., Inc., 2014 WL 2589443, *2 (N.D. Okla. June 10, 2014).

The parties' motions in limine are primarily based on the admissibility of evidence under Federal Rules of Evidence 401 and 403. Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, a court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional response or otherwise tend to adversely affect the jury's attitude toward a particular matter . . . [but] [e]vidence is not unfairly prejudicial merely because it damages a party's case." Leon v. FedEx Ground Package System, Inc., 313 F.R.D. 615, 622 (D.N.M. 2016). "To be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008) (emphasis in original). For the purpose of this Opinion and Order, the Court does not know what evidence will be presented at trial and the Court will preliminarily resolve all doubts in favor of admissibility of disputed evidence.

**III.**

**Plaintiffs' Motion to Exclude Evidence of Caves' Pilot Training (Dkt. # 43)**

Plaintiffs ask the Court to exclude evidence of Caves' training in an Eclipse 500 aircraft, because this is not the type of aircraft involved in the accident and evidence of Caves' pilot training

is inadmissible under Rules 404 and 406. Dkt. # 43. Defendants respond that plaintiffs have placed Caves' training, specifically his ability to follow checklists, directly at issue by alleging that the checklists in the AFM were defective and by offering expert testimony that Caves was a skilled pilot who acted reasonably up to the time of the crash. Dkt. # 83.

Caves owned an Eclipse 500 aircraft and he received training from Keith Jones in the Eclipse 500. Dkt. # 83-6, at 4 The training occurred in February and March 2012, or about 13 months before the crash giving rise to this lawsuit. Jones noted on one training flight that Caves failed to follow checklist procedures, and Jones' notes contained a number of comments "that the checklist procedure was not either done or verbalized." Id. at 5, 9. Jones acknowledged that the Eclipse 500 was a different aircraft than the Premier 390, and Jones could not comment on Caves's training for the Premier 390. Dkt. # 43-2, at 8-9. Jones recommended that Caves needed more training before he could become certified to fly the Eclipse 500, but he believed that Caves would likely obtain the required certification if he continued to train. Id. at 10. Instead of continuing to train in the Eclipse 500, Caves immediately put the Eclipse 500 up for sale and purchased another aircraft. Id. at 16. In the second amended complaint, plaintiffs acknowledge that both engines were shut down during flight before the accident on March 17, 2013, but they claim that Caves could not have restarted the electrical generators due to an incorrect Air Start checklist in the AFM. Dkt. # 129, at 6-7.

Plaintiffs' motion in limine to exclude evidence of Caves' training in the Eclipse 500 aircraft should be denied. One of plaintiffs' theories of product defect is that the checklist in the AFM for restarting the electrical generators is defective. Id. Defendants respond that the pilot either followed the wrong checklist or incorrectly followed the required steps to restart the engines and/or generators. Dkt. # 149, at 5-7. This places the pilot's ability to follow a checklist directly at issue,

and evidence of Caves' inability to correctly follow a checklist is relevant. In addition, plaintiffs intend to offer expert testimony that Caves was a qualified and skilled pilot who was acting reasonably under the circumstances. If plaintiffs proceed with this argument, this opens the door to evidence that Caves had difficulty following checklists in his training. It is not necessary for the Court to reach plaintiffs' arguments concerning the application of Rules 404 and 406, because the disputed evidence is relevant and admissible without treating the evidence as a prior bad act or evidence of habit.

**Plaintiffs' Motion to Exclude Evidence of Improper Aircraft Operation (Dkt. # 44)**

Plaintiffs ask the Court to exclude Caves' statement that he regularly flew the subject aircraft over the recommended weight limit and evidence that the overspeed warning horn was heard twice before the aircraft's engines were shut off by a passenger on March 17, 2013. Dkt. # 44. Defendants respond that evidence that the overspeed warning horn went off is directly relevant to the cause of the crash, and they argue that evidence that the pilot disregarded weight limits is relevant to plaintiffs' claims that the pilot was a skilled pilot who would have followed instructions in the AFM. Dkt. # 80.

The National Transportation Safety Board (NTSB) prepared a transcript after reviewing the cockpit voice recorder (CVR) following the crash. Caves informs his passengers that the landing gear of the aircraft has a weight limit of 13,000 pounds, Caves states that he does not "have any problem with [13,500 pounds]." Dkt. # 80-1, at 12. Caves goes on to say that "so even though the book is that I don't . . . pay a whole lot of attention to it." Id. The transcript also shows that overspeed warnings were heard two times before the engines were shut off. Id. at 15, 25.

Plaintiffs argue that the Caves's statements concerning flying the aircraft over the recommended weight limit and the two overspeed warnings noted in the transcript of the CVR are irrelevant, because neither the aircraft's weight nor speed were the cause of the crash. Dkt. # 44, at 5. Plaintiffs cite Fed. R. Evid. 404 and 406 and argue that evidence that Caves claimed to regularly fly the aircraft over the recommended weight limit is inadmissible. Id. at 7-11. Defendants respond that they are not seeking to introduce the Caves' statement as a prior bad act or as evidence of habit, but as rebuttal to plaintiffs' assertions that Caves was a qualified pilot who would have followed instructions in the AFM. This would be a permissible use of evidence that Caves claimed to disregard the manufacturer's recommended weight limit. Defendants would not be prohibited under Rules 404 or 406 from rebutting plaintiffs' claims concerning the Caves' piloting skills and willingness to follow the manufacturer's recommendations concerning operation of the aircraft. Likewise, evidence that Caves set off two overspeed warnings and operated the aircraft in excess of the speed recommended by the manufacturer is relevant as to Caves' piloting skills and his disregard for the manufacturer's safety recommendations. Admission of this evidence will not be unfairly prejudicial, because it is clear from plaintiffs' filings that a key theme will be that Caves was a good pilot who was operating the aircraft in compliance with his training and that defects in the AFM and the aircraft, rather than any pilot error, caused the crash. The Court finds that plaintiffs' motion in limine (Dkt. # 44) is denied.

**Plaintiffs' Motion Regarding Alleged Misuse of Alternate Landing Gear (Dkt. # 69)**

Plaintiffs ask the Court to exclude evidence or argument that Caves misused the alternate landing gear or that he was contributorily negligent in failing to lock the alternate landing gear in place. Dkt. # 69. Defendants respond that evidence of Caves' failure to properly use the alternate

landing gear system tends to show that pilot error, not a product defect, was the cause of the accident, and this evidence should not be excluded merely because the evidence may not eventually support an instruction on a misuse defense.[2]

Plaintiffs' motion in limine is not a true motion in limine to exclude evidence but, instead, an argument that defendants should be prohibited from presenting the evidence in a particular manner at trial. Neither side disputes that evidence of causation is relevant, but plaintiffs object to the possibility that defendants may characterize Caves' allegedly improper deployment of the alternate landing gear as misuse of the aircraft. The Court finds that it would be premature to prevent defendants from raising a defense of product misuse. As plaintiffs point out, the primary defenses available to a defendant in a products liability claim are lack of evidence of causation, product misuse, and voluntary assumption of the risk. Dkt. # 139, at 3. Voluntary assumption of the risk does not appear to be at issue in this case. The Court will not defeat one of the two remaining defenses based only on plaintiffs' summary of the evidence that may be presented at trial. At the jury instruction conference, the Court will consider whether to instruct on a misuse defense. However, defendants will be permitted to argue that Caves was contributorily negligent as a defense to plaintiffs' negligence claim and that any alleged design flaw in the alternate landing gear system did not cause the accident, even if plaintiffs' motion in limine were granted. Plaintiffs' motion in limine (Dkt. # 69) is denied, but plaintiffs may request a limiting instruction at trial concerning the separate defenses of product misuse (as to the products liability claim) and contributory negligence

---

[2] Plaintiffs have alleged a manufacturer's products liability and a negligence claim against Beechcraft, and the parties do not dispute that contributory negligence is a defense to plaintiffs' negligence claim. Plaintiffs' motion in limine goes only to their products liability claim. See Dkt. # 139, at 6.

(as to the negligence claim) if defendants argue that Caves was contributorily negligent in his operation of the alternate landing gear.

**Plaintiffs' Motion in Limine Concerning FAA Certification (Dkt. # 70)**

Plaintiffs ask the Court to prevent defendants from arguing that "FAA approval or issuance of a type, production or airworthiness certificate" means that the subject aircraft was not defective. Dkt. # 70, at 6. Defendants respond that the FAA's issuance of certificates and the FAA's approval of the AFM tend to show that the aircraft was not defectively designed, and plaintiffs' claims that the FAA did not rigorously examine the alternate landing gear design or the AFM can be raised on cross-examination. Dkt. # 115, at 9.[3]

Plaintiffs argue that compliance with FAA regulations concerning the design and manufacture of the subject aircraft is irrelevant, because a product may comply with federal regulations and still be unreasonably dangerous as a matter of Oklahoma law. Dkt. # 70, at 11-12. They claim that FAA regulations concerning the alternate landing gear and the AFM lack specificity, and that a jury could be confused or misled by evidence of compliance with FAA regulations. Id. at 16-20. Defendants respond that evidence of compliance with FAA regulations tends to rebut plaintiffs' claims that there was a design defect in the alternate landing gear and that the AFM instructions were flawed, and the evidence will not be unfairly prejudicial or misleading for the jury. Dkt. # 115. Although state tort law may provide the standard for liability, the Court finds that evidence of compliance with FAA regulations is relevant, because this evidence tends to rebut

---

3 To the extent that the parties dispute the preemptive effect of FAA regulations, those issues are more fully briefed in defendants' motion for summary judgment (Dkt. # 94) and plaintiffs' response (Dkt. # 158). For the purpose of this Opinion and Order, the Court will assume that FAA regulations do not preempt plaintiffs' claims under state law.

plaintiffs' theories of product defect. Plaintiffs may present evidence that the applicable regulations lack specificity or that the FAA regulations impose only minimal requirements, but this goes to the weight of the evidence of compliance with FAA regulations rather than its admissibility. The Court also notes that plaintiffs seek to introduce evidence of Caves' compliance with FAA regulations related to training and pilot licensing as proof of his skills as a pilot. Plaintiffs should be not be permitted to use FAA regulations as a means to bolster their own case, while preventing defendants from using compliance with regulations as a defense. Plaintiffs' motion in limine (Dkt. # 70) to prohibit defendants from using evidence of compliance with FAA regulations is denied.

**Plaintiffs' Motion to Exclude Evidence Concerning the Method of Pilot Training (Dkt. # 71)**

Plaintiffs ask the Court to exclude evidence that Caves was trained in the aircraft itself, rather than by use of a flight simulator, because this method of pilot training is approved by the FAA and Caves received the proper certification to fly the subject aircraft, regardless of the training method. Dkt. # 71. Defendants respond that evidence of Caves' pilot training is admissible to rebut plaintiffs' argument that Caves was a skilled pilot who could have restarted both engines and generators following a dual-engine shutdown. Dkt. # 113, at 14-17. Defendants claim that plaintiffs intend to offer evidence that Caves took FAA-approved training and held the necessary type rating to operate the subject aircraft as undisputable evidence that Caves was a skilled pilot. Evidence that Caves' training was inadequate is relevant to show that pilot error caused or contributed to the accident. Id. at 23.

Plaintiffs characterize their motion in limine as a request to exclude evidence of the type of training Caves used to obtain his type rating certification to fly the subject aircraft. The parties agree that there are two acceptable methods under FAA regulations. A prospective pilot can receive

training under 14 C.F.R. Part 61, and this training occurs only in the aircraft without the use of a simulator. Dkt. # 71, at 2; Dkt. # 113, at 11. Training can also be acquired pursuant to 14 C.F.R. Part 141/142, and the training occurs in the classroom and in a simulator. Id. The parties' piloting experts, Michael Haider for plaintiffs and Robert "Hoot" Gibson for defendants, dispute which method is the better method of pilot training. Plaintiffs argue that the method of training is irrelevant, because Caves went on a checkride with an FAA examiner and obtained the necessary type rating to operate the subject aircraft. Dkt. # 71, at 3-5.

The Court finds that plaintiff's motion in limine (Dkt. # 71) should be denied. Although styled as a motion to exclude evidence of the type of training, plaintiffs' motion is part of a broader dispute between the parties and their experts as to the admissibility of evidence concerning Caves' pilot training. It is a fair reading of plaintiffs' motion in limine that plaintiffs will assert that Caves must have been qualified pilot simply because he obtained the necessary certification to operate the subject aircraft. Defendants have cited evidence that the method of training selected by Caves did not include training as to a dual engine shutdown, and this would be relevant to show that pilot error was the sole cause of the crash. Dkt. # 113, at 11-12. Plaintiffs have placed Caves' piloting skills at issue, particularly his ability to follow checklists and respond to a dual engine shutdown. Depending on the manner of the plaintiffs' presentation of evidence at trial, the method of Caves' training may have less relevance, but it would be premature for the Court to exclude this evidence on an in limine ruling.

**Plaintiffs' Motion to Exclude Evidence of Betting on Test Results (Dkt. # 72)**

Plaintiffs ask the Court to exclude evidence that their experts Donald Sommer and John Bloomfield placed a wager on the results of a pull force test of the alternate landing gear of an

exemplar aircraft. Dkt. # 72. Defendants argue that evidence that plaintiffs' experts placed a wager on test results is relevant to defendants's arguments that testing was improperly performed and that Sommer and Bloomfield may have had a motive to inflate the pull force necessary to deploy the alternate landing gear. Dkt. # 102.

Plaintiffs state that Sommer and Bloomfield placed a $10 bet on the amount of pull force that would be needed to deploy the alternate landing gear in an exemplar aircraft. Dkt. # 72, at 3. Plaintiffs allege that a third-party, Jay Jones, actually pulled out the handle to deploy the alternate landing gear, and they claim that no money ever changed hands as a result of the bet. Id. at 3-5. The testing was conducted as part of a related lawsuit filed by Regina Caves, the wife of Wesley Caves, and Regina Caves' attorney, Walter Haskins, was also present during the testing. During discovery in the related lawsuit, Regina Caves responded to an interrogatory about the testing and stated that Sommer actually performed the testing. Dkt. # 102-1, at 4. Defendants filed motions to exclude plaintiffs' expert testimony concerning the pull force testing on the ground that Sommer and Bloomfield used an unreliable methodology that inflated the pull force needed to deploy the alternate landing gear. Dkt. ## 52, 57. The Court denied defendants' motions to the extent that they challenged the test results and found that defendants' arguments went to the weight, rather than admissibility, of Sommer's and Bloomfield's testimony.

The Court finds that plaintiffs' motion to exclude evidence of betting on the test results by Sommer and Bloomfield should be denied. There is a dispute as to whether Sommer or a third-party conducted the testing at issue, and defendants have challenged the methodology employed by Sommer and Bloomfield in conducting testing on exemplar aircraft. Evidence that Sommer and Bloomfield had an incentive to inflate the pull force needed to deploy the alternate landing gear is

relevant, because a key issue in this case is whether Sommer and Bloomfield conducted testing on exemplar aircraft in a manner that improperly increased the pull force for using the alternate landing gear. Plaintiffs argue that any minimal relevance of evidence of betting on test results would be outweighed by the unfair prejudice that would result from admission of this evidence. However, plaintiffs argued in response to defendants' Daubert motions that challenges to the methodology used by Sommer and Bloomfield could be raised by defendants on cross-examination, and disagreements about the proper methodology for testing the pull force did not require exclusion of Sommer's or Bloomfield's testimony. Evidence that Sommer and Bloomfield placed a bet about test results is a permissible basis for defendants to challenge the accuracy of such testing, and it could also be relevant to the credibility of Sommer and Bloomfield. Any risk of unfair prejudice is not outweighed by the relevance of the evidence. The motion in limine (Dkt. # 72) is denied.

**Plaintiffs' Motion To Exclude Evidence of Expert's Conduct in Prior Case (Dkt. # 73)**

Plaintiffs asks the Court to prevent defendants from arguing that Frank Graham, plaintiffs' expert sound analyst, "destroyed evidence" in a prior case, because this evidence would be irrelevant and offered for the sole purpose of embarrassing Graham. Dkt. # 73. Defendants respond that Graham has made contradictory statements about his conduct in a prior case, and this evidence goes to his truthfulness and credibility. Dkt. # 114, at 6. Defendants also argue that Graham's past conduct is consistent with his unwillingness to fully explain the basis for his opinions in this case. Id. at 8.

Graham was an expert witness in Littlejohn v. Jet Logistics, Inc., Case No. 11-CVS-24301, filed in Mecklenburg County, North Carolina, and he prepared animation to demonstrate an aircraft's flight path. Graham refused to produce an "FDR file" and claimed that the information

was proprietary. Dkt. # 114-4. Graham subsequently stated that he no longer had the FDR file, but he continued to claim that the FDR file would be proprietary even if he did have a copy of the file. Id. at 5. When deposed in this case, Graham stated that he never destroyed the FDR file and he had it "in [his] pocket the whole time." Dkt. # 114-1. Before his deposition in this case, Graham was asked to give a demonstration of his methodology during his deposition, particularly as to how he opined that certain sounds represented actions taken by the pilot. Graham gave conflicting explanations that he no longer had the equipment and that he would refuse to demonstrate his methodology on the ground that his technology was proprietary. In a separate opinion and order, the Court has ordered that plaintiffs make Graham available for a supplemental deposition during which he must provide a demonstration of his methodology or risk the exclusion of Graham's testimony. Dkt. # 207, at 32-33.

In light of the Court's ruling concerning the admissibility of Graham's testimony, the Court finds that plaintiffs' motion in limine to prevent defendants from cross-examining Graham about his conduct in a prior case is moot if he complies with the requirement that he appear for a supplemental deposition. The primary reason that defendants would introduce evidence of Graham's conduct in Littlejohn would be to challenge the reliability of Graham's methodology, because Graham's prior conduct would be relevant to establish a general unwillingness to fully explain the basis for his expert opinions. However, if Graham appears at a supplemental deposition, the defendants will have seen a demonstration of Graham's methodology and it will be less relevant that Graham was uncooperative during his original deposition. Plaintiffs are correct that it could result in a lengthy delay of the trial for defendants to provide adequate context to introduce evidence of Graham's conduct in the Littlejohn case, and for purposes of judicial economy it would be preferable if this

evidence were unnecessary. However, that does not mean that evidence of Graham's prior conduct is irrelevant or that it would be unfairly prejudicial to introduce this evidence, because Graham may continue his pattern of uncooperative behavior or combative testimony at a supplemental deposition or at trial, and Graham could make evidence of his conduct in Littlejohn more relevant if he refuses to cooperate with a demonstration or fully answer questions at trial. Plaintiffs' motion in limine (Dkt. # 73) is moot, but the parties may renew their arguments as to the relevance of this evidence depending on Graham's future conduct in this case.

**IV.**

**Defendants' Motion in Limine to Exclude of Other Electrical Defects (Dkt. # 62)**

Defendants ask the Court to exclude evidence of electrical defects in the subject aircraft and other aircraft of the same model if the alleged defects did not cause the accident in this case. They also ask the Court to exclude lay opinion testimony concerning the cause of the accident. Plaintiffs respond that Rick Frie should be permitted to testify about electrical problems he observed on a flight on the subject aircraft about two weeks before the crash, and that plaintiffs' experts should be permitted to opine as to electrical defects in other aircraft of the same model and poor workmanship in the subject aircraft.[4] Dkt. # 119.

Admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the

---

[4] Defendants also argue that plaintiffs' piloting expert, Haider, should not be permitted to testify as to his experience flying a different Premier 390 aircraft. The Court has not ruled on defendants' motion to exclude Haider's testimony (Dkt. # 60), and there is a substantial issue as to the admissibility of Haider's testimony under Fed. R. Civ. P. 26. For the purpose of this Opinion and Order, the Court declines to consider defendants' argument to exclude Haider's proposed testimony as to his experience with a similar aircraft, but this argument may be renewed if Haider is permitted to testify.

present case.'" Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987) (quoting Karns v. Emerson Elec. Co., 817 F.2d 1452, 1460 (10th Cir. 1987)). "Substantial similarity depends on the underlying theory of the case." Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.3d 1434, 1440 (10th Cir. 1992). "Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar." Ponder, 834 F.2d at 1560. While a party may lay a foundation for this evidence in the presence of the jury, the court should rule on the admissibility of this evidence outside the presence of the jury. Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988). The party seeking to use evidence of other similar incidents has the burden to prove the admissibility of the evidence. Black v. M & W Gear Co., 269 F.3d 1220, 1227 (10th Cir. 2001); Wheeler, 862 F.2d at 1407.

The Court finds that Frie should be permitted to testify about his observations when he was a passenger on the subject aircraft, but he may not offer lay opinion testimony as to the cause of any electrical malfunctions. Frie was a passenger on the subject aircraft on March 5, 2013, just twelve days before the accident, and he reports that the aircraft suffered electrical problems during a thunderstorm. Dkt. # 62-3, at 2. Plaintiffs' electrical expert, John Bloomfield, opines that there was a loose electrical connection on the pilot's essential bus, and he claims that the loose connection would cause electrical problems and voltage spikes. Dkt. # 52-6, at 13, 33-34. During his deposition, Frie offered unsolicited opinions that the aircraft had electrical problems and that there may have been a loose wire. Dkt. # 62-3, at 3, 6. Frie can testify as a fact witness as to his observations of possible electrical malfunctions, because this goes to the condition of the aircraft

and the existence of possible electrical problems.[5] However, Frie acknowledged that he is "not an electrician" and he could only speculate as to the cause of any electrical problems. Id. at 3-4, 6. The Court finds that Frie cannot offer an opinion as to the cause of any electrical problems that he observed. Defendants can offer their own expert testimony and they can cross-examine plaintiffs' electrical expert, Bloomfield, as to whether the allegedly loose connection could have caused the electrical problems observed by Frie.

Defendants also ask the Court to exclude evidence that Bloomfield observed other loose screws and missing lock washers in the aircraft wreckage, because plaintiffs have not identified any interruption with the electrical supply that could have been caused by these loose screws. Dkt. # 62, at 10-11. Plaintiffs respond that Bloomfield testified in his deposition that the number of loose screws and missing lock washers was evidence of poor workmanship, and evidence of poor workmanship is relevant to their negligence claim. Dkt. # 119, at 15-16. The Court finds that defendants' request to exclude evidence of loose screws and other alleged poor workmanship should be denied, because this evidence could be relevant to plaintiffs' negligence claim and this evidence would not be unfairly prejudicial to defendants.

**Defendants' Motion in Limine Concerning Miscellaneous Issues (Dkt. # 66)**

Defendants ask the Court to exclude any argument as to legal theories not alleged in plaintiffs' original or amended complaints, from offering cumulative expert testimony, and from offering expert testimony outside the scope of the expert reports and depositions. Defendants also ask the Court to exclude evidence concerning damages for lost income as to plaintiff James Rodgers

---

5 The evidence could also be relevant to defendants' claims of pilot error, because Frie's testimony could show that Caves was on notice of electrical problems almost two weeks before the crash and that he continued to operate the aircraft.

past the age of 60, because Rodgers testified in his deposition that he planned to retire at 60. Defendants' argument as to exclusion of legal theories not alleged in the original and amended complaints is moot, because plaintiffs have been permitted to file a second amended complaint (Dkt. # 129).

Defendants argue that plaintiffs should be prohibited from offering cumulative expert testimony. Plaintiffs do not object to defendants' request, but they do claim that it will be necessary for their experts to testify about different aspects of the same alleged product defect. The Court has reviewed the reports of plaintiffs' experts in the context of ruling on defendants' Daubert motions and finds that defendants' argument is well-founded. Plaintiffs' experts do not simply opine as to aspects of an alleged product defect within the scope of their expertise, but the experts repeat the opinions of other experts as their own, even if the individual expert is not qualified to give such an opinion. The Court's ruling on defendants' Daubert motions excluded many opinions offered by plaintiffs' experts that were outside of the respective expert's field of expertise, and the Court's opinion and order (Dkt. # 207) should largely prevent the admission of cumulative expert testimony. Plaintiffs' experts may rely on the opinions of other experts as a basis for their own opinions to the extent such opinions are admissible and that the individual expert previously disclosed his reliance on the opinions of another expert in his report or deposition testimony. However, the Court will not permit multiple experts to offer cumulative testimony merely for the purpose of repeating the same allegations of product defect to the jury.

Defendants argue that plaintiffs should be prohibited from offering expert testimony that was not disclosed in plaintiffs' expert reports or deposition testimony. Plaintiffs do not object to defendants' argument but they argue that they should be permitted to rely on an opinions disclosed

in a supplemental report prepared by an expert.[6] Defendants' motion in limine should be granted as to the exclusion of expert testimony that was not disclosed in an expert report or deposition testimony.

Defendants' final argument is that plaintiffs should be prohibited from offering expert testimony concerning lost income of Rodgers beyond the age of 60, because Rodgers testified in his deposition that he intended to retire at that age. Plaintiffs object to defendants' request and argue that Ralph Scott, Ph. D, should be permitted to testify as to Rodgers' income if he had been able to work to the age of 70. Dkt. # 121. The Court finds that defendants' motion in limine should be denied, because Rodger's deposition merely suggests that he had contemplated retiring at 60. The deposition testimony is not so conclusive that it can be treated as a binding admission that Rodgers would have retired at age 60. However, before plaintiffs can offer Dr. Scott's testimony concerning Rodgers' lost income, plaintiffs must lay a foundation that Rodgers could have and would have been likely to work up to the age of 70.

**IT IS THEREFORE ORDERED** that plaintiffs' motions in limine (Dkt. ## 43, 44, 69, 70, 71, 72) are **denied**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine to Exclude any Evidence that Frank Graham "Destroyed Evidence" in a Previous Case (Dkt. # 73) is **moot** should Graham fully comply with the Court's opinion and order (Dkt. # 207). However, evidence of Graham's conduct in a prior case may be relevant if he fails to fully cooperate at a supplemental deposition.

---

[6] The Court's prior opinion and order considered the admissibility of opinions stated in supplemental reports or affidavits. Dkt. # 207.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* to Exclude Evidence of Other Alleged Electrical Defects/Incidents (Dkt. # 62) is **granted in part** and **denied in part**: defendants' request to exclude lay opinion testimony concerning the cause of electrical problems is granted; the motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Defendants' Motions in Limine – Miscellaneous Evidentiary Issues (Dkt. # 66) is **granted in part**, **moot in part** and **denied in part**: defendants' motion is granted as to the exclusion of cumulative expert testimony and undisclosed expert opinions; it is moot as to claims or legal theories not alleged in the original or amended complaints; it is denied as to the exclusion of damages evidence concerning Rodger's lost income.

**DATED** this 14th day of February, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE