UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES RODGERS and SHERYLL RODGERS, individually and as Husband and Wife; and CHRISTOPHER EVANS and JILL EVANS, individually and as Husband and Wife,<br><br>    Plaintiffs,<br><br>v.<br><br>BEECHCRAFT CORPORATION, f/k/a Hawker Beechcraft Corporation, a Kansas Corporation; HAWKER BEECHCRAFT GLOBAL CUSTOMER SUPPORT, LLC, f/k/a Hawker Beechcraft Services, Inc., a Kansas limited liability company,<br><br>    Defendants. | Case No. 15-CV-0129-CVE-PJC |

## OPINION AND ORDER

Now before the Court is the amended report and recommendation (Dkt. # 191)[1] of Magistrate Judge Paul J. Cleary recommending that the Court grant in part and deny in part Defendants' Motion in Limine to Limit and/or Exclude the Testimony of Michael Haider (Dkt. # 60). Defendants Beechcraft Corporation (Beechcraft) and Hawker Beechcraft Global Customer Support, LLC (HBGCS) ask the Court to exclude the testimony of plaintiffs' piloting expert, Michael Haider, and the Court referred the motion to the magistrate judge for a report and recommendation. Plaintiffs have filed an objection (Dkt. # 192) to the amended report and recommendation, and defendants have responded to plaintiffs' objection (Dkt. # 194). As part of their motion, defendants argued that

---

[1] The original report and recommendation (Dkt. # 189) has been declared moot. Dkt. # 207, at 37.

there was a question as to whether Haider actually "prepared" the expert report that was provided to defendants, and the Court ordered supplemental briefing on this issue. Plaintiffs have filed a supplemental brief (Dkt. # 208), defendants have responded (Dkt. # 213), and defendants' motion to exclude Haider's testimony and the amended report and recommendation are ripe for adjudication.

## I.

On March 16, 2015, plaintiffs James Rodgers and Christopher Evans filed this case alleging a manufacturer's products liability claim against Beechcraft and a negligence claim against Beechcraft and HBGCS. Their spouses, Sheryll Rodgers and Jill Evans, also allege claims of loss of consortium against defendants. James Rodgers and Christopher Evans were passengers on a Beech Premier 390 aircraft, manufactured by Beechcraft in 2008, that was flying from Tulsa, Oklahoma to South Bend, Indiana on March 17, 2013, and the pilot of the aircraft was Wesley Caves. During the flight, plaintiffs allege that both engines of the plane were inadvertently shut down and the pilot was unable to restart both of the engines due to a defective electrical bus distribution system. Dkt. # 28, at 5-6. The pilot was unable to successfully land the plane, it crashed near the South Bend Airport, and James Rodgers and Christopher Evans were injured in the crash. Plaintiffs allege that the alternate landing gear system failed to deploy properly during the attempted landing and that the alternate landing gear system was defectively designed. Id. at 12.

In June 2016, plaintiffs filed a motion to file a second amended complaint (Dkt. # 93) adding a theory of product defect based on the aircraft flight manual (AFM), and they allege that the AFM contains faulty instructions for restarting the electrical generator following a dual engine shutdown. Id. at 4-5. Defendants opposed plaintiffs' motion to amend on the ground that plaintiffs' motion was

untimely. The Court found that plaintiffs had established good cause to amend the complaint outside of the deadline established in the scheduling order for parties to file motions to amend. Dkt. # 128, at 6. However, plaintiffs' motion was filed on the same day as defendants' motion for summary judgment, and the Court considered that there was a legitimate question as to whether the motion to amend was filed in an attempt to avoid summary judgment. Id. at 7. The Court determined that evidence relating to the AFM would be offered at trial even if the motion to amend were denied, and defendants would not be prejudiced by granting the motion to amend. Plaintiffs were permitted to file a second amended complaint.

In the second amended complaint (Dkt. # 129), plaintiffs allege claims of negligence against Beechcraft and HBGCS, a manufacturer's products liability claim against Beechcraft, and loss of consortium claims against Beechcraft and HBGCS. The second amended complaint alleges three defects with the subject aircraft: (1) HBGCS incorrectly installed a repair kit and created a defect in the electrical bus distribution system that caused intermittent electrical supply to essential systems; (2) the alternate landing gear did not operate as represented in the design specifications; and (3) the AFM included faulty instructions for restarting the electrical generators following a shutdown. Dkt. # 129, at 5-7. In addition, plaintiffs allege that defendants were negligent due to inadequate assembly and inspection practices, substandard wiring practices, and the design of the alternate landing gear. Id. at 10.

The deadline in the scheduling order for plaintiffs' expert identification and production of expert reports was November 30, 2015. Dkt. # 18. Defendants agreed to extend the deadline to January 31, 2016. January 31, 2016 was a Sunday and the expert reports were required to be provided to defendants on February 1, 2016. On January 19, 2016, plaintiffs sought another

3

extension of the deadline to identify experts until 60 days after plaintiffs received additional discovery that their experts would need to review. Dkt. # 30. Defendants objected to plaintiffs' request for an extension of time. Dkt. # 32. Plaintiffs' motion was denied and they were required make any expert disclosures no later than January 30, 2016. Dkt. # 37.

In support of their claims, plaintiffs sought the services of an expert on piloting matters and plaintiffs' counsel asked Frank Graham, one of their expert witnesses, to contact Haider about the possibility of providing expert opinions in this case. Dkt. # 208-1, at 1; Dkt. # 213-1, at 5. Following Graham's contact with Haider, Graham told Haider that he would contact Joel LaCourse, one of plaintiffs' attorneys, and recommend that plaintiffs retain Haider as an expert. Dkt. # 213-1, at 5. LaCourse contacted Haider around January 15 or 16, 2016, and LaCourse gave Haider some information about the accident and asked Haider to consider whether he wanted to be an expert witness for plaintiffs. Id. Haider understood that a non-pilot passenger, Steve Davis, shut the engines off and that Wesley Caves was the pilot. Id. at 6. LaCourse states that he asked Haider to review documents from the National Transportation Safety Board (NTSB), and LaCourse outlined the opinions likely to be provided by plaintiffs' other experts. Dkt. # 208-1, at 2. However, LaCourse did not actually provide any documents to Haider on January 15, 2016. Dkt. # 208-1, at 2; Dkt. # 213-1, at 6. Haider claims that LaCourse asked Haider if he would be willing to render an opinion as to "the design of the electrical system and maintenance of such system." Dkt. # 213-1, at 6. LaCourse called Haider later in the day and an attorney for the estates of Caves and Davis also participated in the conversation. Haider states that the second call was a "rehash" of his earlier conversation with LaCourse. Id. LaCourse and another attorney "indicated" to Haider that the pull

4

force required to use the alternate landing gear greatly exceeded the specifications provided by Beechcraft. Id. at 7.

LaCourse next spoke to Haider on January 25, 2016. Dkt. # 208-1, at 3. Haider agreed to testify on behalf of plaintiffs. Dkt. # 213-1, at 7. Haider was advised that he would have to prepare an expert report, but he was not initially told when that report was due. Id. LaCourse states that he sent a retainer agreement to Haider on January 26, 2016, and he sent "our discovery file and key documents" to Haider for overnight delivery. Dkt. # 208-1, at 3. Haider received the documents on January 27, 2016, and he requested additional documents that were prepared by the NTSB. Id. at 36. Haider's billing records show that he received and opened the information he received from LaCourse on January 30, 2016 and he spent one hour browsing through and organizing the material. Dkt. # 213-2, at 1. LaCourse contacted Haider on January 31, 2016 to discuss Haider's opinions, and he states that they spoke for one or two hours. Dkt. # 208-1, at 3. Haider does not recall having any additional conversations with LaCourse, and he recalls that he next spoke to LaCourse's co-counsel, Fred Stoops. Dkt. # 213-1, at 8. E-mails show that LaCourse attempted to contact Haider at 5:32 p.m. on January 31, 2016, and that LaCourse sent an e-mail to Karman Stoops, another attorney, at 10:50 p.m. on January 31, 2016 stating that he was on the phone with Haider. Id. at 38, 40. In the e-mail, LaCourse states that "I have info to tweek Mike's report and get to him for blessing." Id. Haider testified in his deposition that he "reviewed" but did not "read" all of the documents provided to him by plaintiffs' counsel. Dkt. # 213-1, at 9.

On February 1, 2016, Fred and Karman Stoops spoke to Haider, and they spoke to Haider about a draft report that had been sent to him by plaintiffs' counsel. The report was drafted by plaintiffs' counsel, and LaCourse states that the report memorialized opinions expressed during

phone conversations with Haider. Dkt. # 208-1, at 4. Karman Stoops took notes of the conversation, and the notes show that Haider did not believe pilots are typically trained about a checklist for a dual-engine failure, and it appears that Haider may have asked for records of Caves' pilot training. Id. at 42 ("If have training rec→ ? taught recover dual engine). Haider testified in his deposition that a report was e-mailed to him, and he went over the report with a paralegal. Dkt. # 213-1, at 14. Haider could recall only one specific change that he requested to the report, which was that there was no checklist to restart both engines following a dual-engine failure. Id.

Plaintiffs disclosed Haider's report to defense counsel on February 1, 2016. Haider has a bachelor of science degree from the United States Military Academy at West Point, and a masters degree in procurement, acquisition, and business management from Webster University. Dkt. # 60-5, at 9. He is a graduate of the United States Naval Test Pilot School, and he has nearly 7,000 hours of flight time in various aircraft, including the aircraft at issue in this case. Id. The report contained a list of documents that Haider represented that he had reviewed and considered in reaching expert opinions, including documents from the NTSB, eight disks of primarily discovery materials, and two deposition transcripts. Id. at 4. Haider opines that Caves used an acceptable method of pilot training to become certified on the Premier 390 aircraft and that Caves was trained on how to use the alternate landing gear, but that Caves would not have been expected to know how to restart both engines following a dual-engine shutdown. Id. at 5. He offered several opinions under a broader category that a "pilot should be able to rely on the functionality of an aircraft as designed." Id. Haider opines that "there is no reason that the engines could not have been restarted and the aircraft landed safely unless there was a defect or failure within the electrical system," and goes on to say that the aircraft experienced intermittent electrical system failures. Id. He states that Beechcraft

failed to warn pilots of the significant pull force needed to deploy the alternate landing gear, and he opines that the alternate landing gear system was defectively designed. Id. at 6. According to Haider, HBGCS serviced the aircraft on numerous occasions and had an opportunity to correct defects in the alternate landing gear and electrical systems and failed to do so. Id. Finally, Haider offered a series of opinions that Caves acted as a "reasonably prudent pilot" and that pilot error was not a contributing factor of the crash. Id. at 7.

Defendants filed a motion to exclude Haider's testimony. Dkt. # 60. Defendants argue that Haider is unqualified to offer many of the opinions in his expert report, and they assert that he lacks a sufficient factual foundation for his proposed expert testimony. Defendants raised the circumstances of the drafting of Haider's report, but this was not expressly identified as a basis to exclude Haider's testimony. Id. at 7. The motion was referred to the magistrate judge for a report and recommendation. The magistrate judge discussed the law concerning the preparation of expert reports and questioned whether plaintiffs had violated Fed. R. Civ. P. 26 by drafting Haider's report, but he made no formal recommendation on this issue. Dkt. # 191, at 7-12. The Court ordered supplemental briefing on the circumstances under which Haider's report was prepared, because it was necessary to determine if Haider actually "prepared" his expert report before the Court reaches the merits of defendants' motion to exclude Haider's testimony. Dkt. # 207, at 34-35. Plaintiffs and defendants have filed supplemental briefs concerning the preparation of Haider's report. Dkt. ## 208, 213.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the

magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

Defendants argue that Haider's expert testimony should be excluded, because he did not personally prepare the expert report that was provided to defendants. Defendants also argue that Haider is unqualified to offer many of the opinions contained in his report and he lacks a sufficient factual basis to offer opinions as to Caves' piloting skills and conduct leading up to the crash.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702. The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts in considering a Daubert challenge to the admissibility of expert testimony. First, the court should make a preliminary finding that the expert is qualified to testify. Id. at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or

>  potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissable. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

Before reaching the issue of Haider's qualifications and reliability, the Court will initially consider whether Haider's testimony should be excluded due to his alleged failure to prepare an expert report in compliance with Rule 26. Under Rule 26, any person who will be offered as a retained expert witness must be disclosed to the opposing party by a deadline established in the scheduling order, and the disclosure must be "accompanied by a written report–prepared and signed by the witness . . . ." Fed. R. Civ. P. 26(a)(2)(B). Expert disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). The magistrate judge noted that there is a significant issue in this case as to whether Haider "prepared" his own expert report, and the Court ordered supplemental briefing on this issue.

Rule 26 requires that an expert witness prepare his own report and the expert is responsible for providing the substantive opinions stated in his report. Trigon Ins. Co. v. United States, 204 F.R.D. 277, 293 (E.D. Va. 2001). However, the requirement that an expert "prepare" his own report does not preclude an attorney from providing assistance to the expert in drafting an expert report in some circumstances. The Advisory Committee Notes to Rule 26 state that:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Advisory Committee Notes, 1993 Amendment. Although some attorney involvement is permissible, an expert must substantially participate in the drafting of his report. Manning v. Crockett, 1999 WL 342715 (N.D. Ill. May 18, 1999). When a party alleges that opposing counsel engaged in "ghost writing" an expert's report, the moving party may rely on documents outside of the report to show that opposing counsel went beyond "editorial assistance" and actually supplied substantive opinions. Seahorn Inv., LLC v. Federal Ins. Co., 2015 WL 5297264, *8 (S.D. Miss. Sep. 10, 2015).

In this case, there is no dispute that Haider did not personally compose his report or any drafts of the report, and the report was "written" by plaintiffs' counsel. Haider testified in his deposition that he was not the "author" of the expert report and that Stoops actually wrote the report. Dkt. # 213-1, at 14. Haider states that the report was sent to him and he went over the report with a paralegal, and he could recall only one specific change that he asked to be made before he signed the report. Id. Haider did not submit an affidavit in response to the Court's order for supplemental briefing, and his deposition testimony contains the only description from Haider of the drafting of the report.

Plaintiffs argue that Haider had no prior experience as an expert, that he needed assistance in drafting a report, and the report prepared by plaintiffs' counsel "memorialized" opinions expressed by Haider during phone conversations. Dkt. # 208, at 7. The mere fact that plaintiffs' counsel provided assistance to Haider in the drafting of his report does not automatically require the exclusion of his testimony, and the Court will consider the totality of the circumstances to determine if Haider substantially participated in the "preparation" of his report. The Court initially notes that Haider's report was rushed and there is a debate as to what evidence he considered before the report was provided to defendants. Documents were provided to Haider on January 27 and 28, 2016, and he testified in his deposition that he "reviewed" but did not "read" all of the evidence. Dkt. # 208-1, at 3; Dkt. # 213-1, at 9. Haider's report states that he reviewed 8 CDs of evidence, documents from the NTSB, and the depositions of Christopher Evans and Scott Kraus. Dkt. # 60-5, at 2-4. However, Haider's billing records show that on January 30, 2016, he billed for one hour to "Receive and open/organize case packet/Browse through case CD's." Dkt. # 213-2, at 1. Haider's billing records also show that he did not read the depositions of Evans and Kraus until February 4 and 5, 2016, even though his report signed on February 1, 2016 states that he had already reviewed the deposition transcripts. Dkt. # 213-1, at 1. This evidence calls into question whether Haider spent any significant amount of time reviewing evidentiary materials before he was asked to sign an expert report on February 1, 2016.

Plaintiffs claim that Haider had a sufficient command of the evidence to participate in the preparation of his report, because many of his opinions are based on his knowledge and experience and did not require that he spend extensive amounts of time reviewing documents. Dkt. # 208, at 8. Experts are permitted to offer opinions based on their training and experience, and not every

11

opinion by an expert witness depends wholly on the evidence in a particular case. However, a review of the report signed by Haider shows that he offered opinions on far-ranging issues well outside of his experience as a pilot, and his training and experience are not a sufficient basis for many of the opinions offered in the report. For example, plaintiffs intend to offer Haider to testify that the aircraft had electrical problems that caused intermittent electrical supply that caused many electrical components to fail in the time just before the aircraft crashed. Dkt. # 60-5, at 5. Even assuming that Haider is qualified to offer such an opinion, this type of opinion would have to be based on review of documents and inspection of the aircraft, and there is no basis for the Court to conclude the Haider considered evidence that would support his opinions concerning the aircraft's alleged electrical problems. It is also not clear that Haider's knowledge and experience, standing alone, is a sufficient basis to offer opinions on piloting matters. Haider intends to testify that Caves acted as a "reasonably prudent pilot and that Caves operated the aircraft in a manner consistent with the AFM. Haider must have a firm grasp of the events leading up to the crash in order to have formed an opinion on Caves' performance in order to rule out pilot error as a cause of the crash, and Haider's knowledge and experience alone are not enough to have allowed him to express an opinion on Caves' performance. Plaintiffs argue that Haider had "unfettered access to NTSB documents," but having access to documents does not mean that Haider read the documents. Haider testified in his deposition that he "pulled" one NTSB report off the Internet in January 2016, but he did not bill for any time spent reviewing this report. Dkt. 213-1, at 13. As to Haider's opinions concerning the AFM, it is not clear that Haider had sufficient recall of the AFM to offer opinions unless he actually reviewed the AFM contemporaneously with the drafting of his report. During his deposition, Haider could not recall the procedure for restarting an electrical generator of the subject aircraft without

looking at the AFM, and Haider explained that he flies too many different types of aircraft to remember the procedures for each aircraft. Id. at 31. Haider likely has the qualifications to offer opinions on piloting matters, but his piloting experience alone is not enough to show that he has a sufficient basis to offer expert opinions without the review of appropriate evidentiary materials.

The Court must also consider what level of participation Haider actually had in drafting the report and whether Haider's participation was substantial. The deadline for plaintiffs to provide expert reports to defendants was February 1, 2016, but Haider did not sign a retainer agreement to serve as an expert until January 26, 2016. Plaintiffs' counsel sent Haider documents and they were received by Haider on January 27 and 28, 2016. However, Haider's billing records show that he did not begin to review the materials he received until January 30, 2016, and he spent only one hour organizing the materials that day. LaCourse sent Haider an e-mail at 5:32 p.m. on January 31, 2016 asking to speak to Haider about his report, and LaCourse was on the phone with Haider at 10:50 p.m. discussing Haider's report. Haider spoke to Fred and Karman Stoops on February 1, 2016 to finalize the report. Haider billed one hour of time for preparing, reading, and editing the report. Haider clearly stated in his deposition that he was not the "author" of the report and he did not deny that Fred Stoops actually wrote the report. In addition, he denied that he personally had any knowledge supporting several of the opinions offered in the report. Dkt. # 213, at 20-22 (Haider testified that he was told that Caves underwent pilot training but that he did not personally investigate what that training encompassed); id. at 30 (Haider acknowledged that Fred Stoops included an opinion that the aircraft suffered intermittent electrical failures but Haider had no knowledge of this fact); id. at 33 (Haider made a "reasonable man" assumption that Caves would have fully pulled out the alternate landing gear handle but had no evidence to support this opinion).

The circumstances under which the report was drafted and Haider's lack of knowledge to support many of the opinions stated in the report do not support a finding that Haider substantially participated in the drafting of the report.

Finally, the Court questions whether Haider is the type of expert for which it would be appropriate for an attorney to prepare a report without any draft being submitted by the expert. There are situations in which attorneys can assist an expert with drafting an expert report, as long as it is clear that the substantive opinions are supplied by the expert rather than the attorney. The Advisory Committee Notes reference "automobile mechanics" as a type of witness who may need assistance, and this could reasonably refer to a category of expert witnesses less familiar with writing reports or who intend to testify primarily on the basis of training or experience instead of academic requirements. Although Haider was inexperienced as an expert, it is not clear that he falls within the category of experts who require assistance in putting together a first draft of an expert report. Haider is well-educated and holds bachelor and master degrees and, and even if he were inexperienced as an expert, he could put together a draft report stating his substantive opinions. The Advisory Committee Notes contemplate attorney "assistance" in limited circumstances, but plaintiffs have not shown that this is a situation in which it was necessary for plaintiffs' counsel to completely draft the report for Haider.

Considering the totality of the circumstances, the Court finds that Haider did not "prepare" an expert report in compliance with Rule 26, and he should not be permitted to testify. Haider did not personally compose even a first draft of the report, and the drafts that were prepared were done at the last minute and included many opinions outside of Haider's expertise. Haider's billing records show that he spent little time reviewing the materials he received before February 1, 2016 and he

admits that he "reviewed" but did not "read" the materials. Plaintiffs' argument that Haider could rely on his training and expertise alone, rather than the evidentiary materials, does not excuse the apparent lack of preparation by Haider to draft a report. Defendants' motion (Dkt. # 60) to exclude Haider's testimony should be granted. The magistrate judge identified the potential Rule 26 issue in his report and recommendation, but he declined to offer a recommendation on this issue. It is unnecessary for the Court to reach the magistrate judge's recommendations as to the admissibility of Haider's testimony under Daubert, and the report and recommendation (Dkt. # 191) is moot.

**IT IS THEREFORE ORDERED** that Defendants' Motion in Limine to Limit and/or Exclude the Testimony of Michael Haider (Dkt. # 60) is **granted**.

**IT IS FURTHER ORDERED** that the amended report and recommendation (Dkt. # 191) is **moot**.

**DATED** this 14th day of March, 2017.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE